# KRIEGER KIM & LEWIN LLP

500 Fifth Avenue
New York, NY 10110

Telephone: (212) 390-9550
www.KKLllp.com

February 5, 2021

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        **Re:** *Suedrohrbau Saudi Co. Ltd., and NACAP Pipeline & Energy Beteiligungs GmbH (NPLE) v. Bazzi et al.*, 19 Civ. 5130 (EK) (LB)

Dear Judge Komitee,

      On behalf of Defendants Riad and Souad Bazzi (the "Bazzis"), we write in response to Your Honor's Order dated January 28, 2021 directing Defendants "to provide information concerning their citizenship and immigration status sufficient to allow the Court to assess whether full diversity exists." When Plaintiffs commenced the present action and through today, both Defendants were – and remain – dual citizens of the United States and Lebanon and were – and remain – domiciled in Lebanon.

      As a result, the Court lacks subject matter jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332(a). Thus, in the event the Court dismisses Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' remaining non-federal claims.

      Defendants did not raise this jurisdictional defect in their motions to dismiss, in part because the Court presently has subject matter jurisdiction on other grounds due to Plaintiffs' RICO claims. However, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Fuerst v. Fuerst*, 832 F. Supp. 2d 210 (E.D.N.Y. 2011) (dismissing action *sua sponte* where diversity was lacking).

      Section 1332(a) confers subject matter jurisdiction on a federal court where the civil action is (1) between "citizens of different States" or (2) between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1) & (2). "[T]o be a citizen of [a] State within the meaning of the diversity statute, a natural person must be both a citizen of the United States *and* domiciled within the state." *Fuerst*, 832 F. Supp. 2d at 217 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)) (emphasis in original). For those with dual citizenship, American citizenship determines diversity; otherwise, the dual citizen could invoke alienage jurisdiction and obtain an advantage unavailable to native-born U.S. citizens. *Id.* (collecting cases).

However, U.S. citizens domiciled abroad "are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019) (citation omitted). Thus, "a suit by or against United States citizens domiciled abroad may not be premised on diversity." *Id.* at 74–75 (citation omitted)*; see Fuerst*, 832 F. Supp. 2d at 217. In addition, as is the case here, where both parties are domiciled outside the United States, there is no diversity jurisdiction. *See, e.g.*, *Herzberg v. MegaSpirea Prods. SAS*, No. 7 Civ. 10503 (RJS), 2009 WL 702234, at *1–2 (S.D.N.Y. Mar. 10, 2009).

Diversity is typically determined by the parties' domiciles when the complaint was filed. *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). However, under *Wright v. Musanti*, 887 F.3d 577 (2d Cir. 2018), when federal jurisdiction is established at the outset of a case through the assertion of a federal claim, and such federal claim is subsequently dismissed, a court need only determine whether there is federal jurisdiction based on the diversity of the parties at the time the federal question jurisdiction dissipated, not when the case was commenced. *Id.* at 584–85. The party invoking jurisdiction under Section 1332 – here, Plaintiffs – bears the burden of showing that the grounds for diversity exist. *See, e.g.*, *Herrick Co., Inc. v. SCS Comms., Inc.*, 251 F.3d 315, 322–24 (2d Cir. 2001); *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 96–97 (E.D.N.Y. 2019).

As set forth in more detail below, Plaintiffs cannot meet their burden because the Bazzis are dual citizens domiciled in Lebanon at least as of when this case was filed in September 2019, and they continue to be domiciled in Lebanon through the present day.

Riad and Souad Bazzi were both born in Lebanon and have maintained their primary residence in Beirut for many years, including in September 2019. *See* R. Bazzi Aff. ¶¶ 1–3, 5; S. Bazzi Aff. ¶¶ 1–3, 5. When the Bazzis obtained their U.S. citizenship in or about July 2019, they did not relinquish their Lebanese citizenship and always intended to return to their permanent home in Lebanon, which they did the following month, August 2019. *See* R. Bazzi Aff. ¶¶ 14–16, 19; S. Bazzi Aff. ¶¶ 12–14, 17. The Bazzis applied for legal status in the U.S. and purchased an apartment in Brooklyn (which they no longer own) in 2011 to facilitate spending time with their daughters who had moved to the United States. *See* R. Bazzi Aff. ¶¶ 12–15; S. Bazzi Aff. ¶¶ 10–13. Nevertheless, the Bazzis' true fixed home at least as of September 2019 was Lebanon, where they have owned their current residence since 2009. *See* R. Bazzi Aff. ¶¶ 3–5; S. Bazzi Aff. ¶¶ 3–5.

In addition, the Bazzis' three children were all born and raised in the Middle East – their oldest was born in Lebanon – and each daughter retains Lebanese citizenship. *See* R. Bazzi Aff. ¶ 11; S. Bazzi Aff. ¶ 9. In August 2019, two of the Bazzis' children visited them in Lebanon. *See* R. Bazzi Aff. ¶ 19; S. Bazzi Aff. ¶ 17.

Before, during, and after the time when the instant action was brought, the Bazzis have also paid taxes in Lebanon, owned cars, and had bank accounts, identification cards, and phone numbers, all in Lebanon. *See* R. Bazzi Aff. ¶¶ 6, 8, 10; S. Bazzi Aff. ¶¶ 6, 8. In fact, after years of having a Saudi driver's license, which also permitted him to operate a motor vehicle in

Lebanon, Mr. Bazzi obtained a Lebanese driver's license while in Beirut in August 2019 because his Saudi license was expiring. *See* R. Bazzi Aff. ¶ 9. In addition, the Bazzis have also had and paid for health insurance in Lebanon for approximately the last decade. *See* R. Bazzi Aff. ¶ 7; S. Bazzi Aff. ¶ 7.

In contrast, while the Bazzis have spent time in Brooklyn at various points since in or about 2009 – at one point to help care for a daughter who was ill – they have never intended to stay in New York indefinitely and have always returned to, and intended to return to, their true, fixed home in Lebanon, where they were residing when the plaintiffs sued them in September 2019 and where they reside today. The Bazzis never had New York drivers' licenses and never registered to vote in New York. *See* R. Bazzi Aff. ¶ 18; S. Bazzi Aff. ¶ 16. And while they certainly took steps to facilitate their time in New York – including, among other things, maintaining a U.S. bank account, obtaining New York identification cards in or about 2011 (which they never renewed), and securing basic health insurance for a period – these actions are outweighed by the many indicia that the Defendants always intended to and regularly did return to Lebanon over the years. *See* R. Bazzi Aff. ¶ 17; S. Bazzi Aff. ¶ 15. The fact that the Bazzis resided in New York for periods of time does not establish a New York domicile let alone at the pertinent time, especially given they were living in their home in Beirut when this case was brought and remain in Lebanon. *See, e.g.*, *Van Busick*, 935 F.3d at 54 ("[R]esidence alone is insufficient to establish domicile for jurisdictional purposes.").

Under these circumstances, it is clear that the Bazzis were and are domiciled in Lebanon. *See, e.g.*, *Van Busick*, 935 F.3d at 53 (explaining that a domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning" (citation omitted)); *Finnegan*, 409 F. Supp. 3d at 100-02 (finding party domiciled where, *inter alia*, he lived, filed taxes, and had personal relationships).

Therefore, subject matter jurisdiction based on diversity is lacking. If the Court dismisses Plaintiffs' RICO claims, it should decline to exercise supplemental jurisdiction over the remaining non-federal claims and dismiss this case in its entirety. *See* 28 U.S. 1367(c) (permitting courts to decline to exercise supplemental jurisdiction where, among other things, "the district court has dismissed all claims over which it has original jurisdiction"); *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (vacating district court's exercise of supplemental jurisdiction over state law claims after dismissing federal claims because in "the usual case in which all federal-law claims are eliminated before trial . . . the balance of factors to

*[Continued on Next Page]*

be considered . . . judicial economy, convenience, fairness, and comity . . . point toward declining to exercise jurisdiction over the remaining state-law claims) (citation omitted).

                                                                       Respectfully submitted,
                                                                       KRIEGER KIM & LEWIN LLP

                                      By:   /s/ Paul Krieger
                                                                       Paul M. Krieger
                                                                       Katherine Cheng

cc:     all counsel of record (ECF)