UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

SUEDROHRBAU SAUDI CO. LTD., and NACAP PIPELINE & ENERGY BETEILIGUNGS GMBH (NPLE),

Plaintiffs,

-against-

RIAD BAZZI and SOUAD BAZZI,

Defendants.

--------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5130(EK)(LB)

ERIC KOMITEE, United States District Judge:

This is an action by a Saudi pipeline contractor, Suedrohrbau Saudi Co. Ltd. ("SRB"), and its five-percent shareholder, NACAP Pipeline & Energy Beteiligungs GmbH ("NACAP"), against a former employee of SRB and his wife. Defendant Riad Bazzi was an "Area Manager" for SRB, and despite the relatively modest title, he apparently possessed vast corporate authority: SRB alleges that he was "entirely and solely responsible for managing the day-to-day operations of the company." Am. Compl. ¶ 7, ECF No. 15. Among other things, Bazzi was responsible for "negotiating and signing on behalf of SRB all contracts for oil and gas projects, and the execution of those SRB projects, including the selection and management of all suppliers and contractors." *Id.*

According to SRB and NACAP, Bazzi exercised these powers faithlessly: over the course of many years, he conspired with SRB's suppliers to concoct phony invoices, *id.* ¶¶ 47-50, diverted payments into his own accounts, *id.* ¶¶ 48, 66, 69-71, 73, and took kickbacks from suppliers. *Id.* ¶¶ 46, 66, 70-71, 81. The scheme, it is alleged, had a devastating effect on SRB's financial position. *See* Pls.'s Affidavit of Heiko H. Koop ¶ 8, ECF No. 27-6 ("Koop Aff.").

SRB and NACAP say that Bazzi's actions amount to the conduct of a racketeering enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *E.g.*, *id.* ¶¶ 90-126. The RICO claims (for conspiracy and substantive liability) allege predicate acts of mail and wire fraud, transport and receipt of stolen money, and travel in aid of racketeering. The Plaintiffs also allege the violation of several state laws: fraud, breach of fiduciary duty, unjust enrichment, and civil conspiracy. In addition to suing Riad Bazzi, they bring suit against his wife Souad Bazzi, asserting unjust-enrichment and civil-conspiracy claims based on her receipt of proceeds from the scheme.

The Bazzis now move to dismiss. They contend, first, that neither SRB nor NACAP has standing to sue, and that this action should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Next, they contend that the RICO claims must be

dismissed because (a) the RICO provisions at issue do not apply extraterritorially, and Plaintiffs do not plausibly allege a domestic injury, and (b) the statute of limitations on the RICO violations has in any event elapsed. As to Plaintiffs' state-law claims, the Bazzis contend that the Court should apply Saudi, not New York, law, and that Saudi law mandates dismissal. Even if New York law applies, the Defendants assert, the state-law claims should still be dismissed under Rule 12(b)(6).

For the reasons set forth below, I conclude that NACAP lacks standing to sue. I assume (without deciding) that SRB has the legal capacity to sue, but nevertheless dismiss SRB's RICO claim for failure to allege a domestic injury, as required by *Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019). With no federal claim remaining, I turn to the question of whether the state claims should proceed. The threshold issue on that front is whether diversity jurisdiction exists, or whether the state-law claims are dependent on the Court's exercise of supplemental jurisdiction (which I would decline in the absence of a surviving federal claim). *E.g.*, *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness,

and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.”).

I remain unconvinced, at this point, that the Court has jurisdiction to entertain the state-law claims at all, given the relatively thin allegations in the Amended Complaint concerning the Defendants’ domicile and the dueling affidavits submitted thereafter. And the Court must, of course, confirm that jurisdiction lies before reaching the state-law claims. *E.g.*, *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (before deciding any cause of action, federal courts are required to determine that the case is properly within their subject-matter jurisdiction). Accordingly, I dismiss the Defendants’ motion regarding the state-law claims, pending a hearing on jurisdiction and without prejudice to refile the motion if diversity is established.

## I. Background

The following facts are taken from the Amended Complaint, unless otherwise noted, and assumed to be true for purposes of this Order. Riad Bazzi worked for SRB between 1990 and 2014. Am. Compl. ¶ 7. In 2001 Bazzi was promoted to “Area Manager,” a position he held until he left the company in late 2014; he was also a member of SRB’s four-person “Board of Managers.” *Id.* ¶¶ 5, 7. As described above, Bazzi was responsible for, among other things, overseeing and approving

all contracts between SRB and its suppliers. *Id.* ¶ 7. As part of these responsibilities, Bazzi contracted with ten companies — Plaintiffs call them the "Riyadh Suppliers" — to provide "spare equipment parts, consumable materials and supplies" to SRB. *Id.* ¶¶ 19, 34-35. However, these businesses were allegedly shams, operating from one-room offices and without warehouse facilities. *Id.* ¶¶ 39-40. Instead of providing legitimate supplies, the Riyadh Suppliers "overcharge[d] SRB for goods and services not actually needed (or delivered) or for prices significantly higher than any reasonable market price." *Id.* ¶ 35. Plaintiffs allege this was done to profit Bazzi and his accomplices (certain fellow SRB employees). *Id.* ¶¶ 34-35

The Amended Complaint describes, for example, how one SRB employee prepared hundreds of sham invoices purporting to come from the Riyadh Suppliers. *Id.* ¶ 47. Bazzi authorized payment of these invoices, which totaled $1.9 million in value. *Id.* In another instance, Bazzi signed off on invoices falsely stating that certain supplies were delivered; that payment was then delivered to an SRB employee, not the suppliers, who was participating in the scheme. *Id.* ¶ 48. In all, the Amended Complaint alleges that between 2000 and 2014, SRB paid the Riyadh Suppliers more than $100 million, with Bazzi and his accomplices allegedly skimming $60 million in overpayment and kickbacks. *Id.* ¶¶ 44, 46.

Plaintiffs allege that Bazzi propagated this fraud in part from New York. Between 2008 and 2011, while he was working for SRB, Bazzi traveled back and forth from the Middle East to New York, where his family was living. *Id.* ¶¶ 7, 80. Between 2012 and 2014, Bazzi lived "part time" in an apartment he and his wife had purchased in Brooklyn. *Id.* The Amended Complaint avers that Bazzi was in New York for several periods in 2013 and 2014, *id.* ¶ 80, and that he moved "permanently" to Brooklyn in August 2014. *Id.* Bazzi was allegedly "engaging in and directing the criminal schemes" from New York over those six years, including by causing SRB to enter into various fraudulent supply contracts. *Id.* ¶¶ 80, 112. He also transferred funds generated from the fraud out of SRB accounts in Saudi Arabia and into U.S. accounts belonging to himself and his family. *Id.* ¶ 69.

Plaintiffs allege that in the course of the scheme, Bazzi moved millions in embezzled funds between various bank accounts and purchased properties in Saudi Arabia, Lebanon, and New York. *Id.* ¶ 32. His wife allegedly received expensive jewelry purchased with embezzled funds, as well as millions of dollars in her bank accounts. *Id.* ¶ 2. Bazzi is also alleged to have concealed the entirety of this fraud well after he left the company in December 2014, including while living in New York. *See, e.g.*, *id.* ¶¶ 7, 56-59, 61-62, 87-88.

## II. Capacity to Sue and Article III Standing

Defendants contend that neither Plaintiff has standing to bring this case. SRB lacks standing, they argue, because it is a "defunct entity that has not been operating for six years." R. Bazzi's Br. in Support of the Mot. to Dismiss at 10, ECF No. 27-1 ("R. Bazzi's Mot."). NACAP lacks standing, they argue, because it sustained no direct injuries, and its parent-subsidiary relationship with SRB is insufficient to confer standing. For the reasons set forth below, I conclude that NACAP lacks standing and dismiss that entity. I defer decision on the question of SRB's capacity to sue to a (somewhat) later date.

### A. NACAP

NACAP owns five percent of SRB's equity. This is, in itself, insufficient as a matter of law to confer standing; it is axiomatic that corporate parents cannot generally bring suit for injuries to their subsidiaries. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011) (parent company could not sue for injuries suffered by its subsidiary); *Clarex Ltd. v. Natixis Secs. Am. LLC*, No. 12-CV-0722, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) ("It is black-letter law that one corporation cannot assert an affiliate's legal rights."); *see also* Deborah A. DeMott, Shareholder Deriv. Actions: L. & Prac. § 2:2 (2020-2021) ("[A]s

a general proposition, injury done to a subsidiary does not create a claim that may be asserted in a direct action by the subsidiary's parent corporation . . . .").

Plaintiffs conceded as much in a prior submission in this case. Pls.'s Resp. to R. Bazzi's Pre-motion Conference Request at 1, ECF No. 20 (agreeing with the principle that "a parent cannot sue for damages to a subsidiary and vice versa"). In opposing dismissal, NACAP argues that it "is suing based on its own direct injuries." Pls.'s Opp. Br. to R. Bazzi's Mot. at 10, ECF No. 27-3. But it does not specify what those injuries are, and the Amended Complaint is devoid of any factual content alleging a direct injury to NACAP. *See* Am. Compl. ¶ 6 (sole fact in the Amended Complaint specific to NACAP is that it "owns 5% of SRB"). NACAP also argues that its status as a five-percent shareholder of SRB means that Bazzi, as a director of SRB, "owed a fiduciary duty" to NACAP. Pls.'s Opp. Br. to R. Bazzi's Mot. at 11. Whether this is true or not,[1] it does not

---

[1] It has not always been clear that a corporate executive's fiduciary duties run to *individual shareholders*, as opposed to the corporation itself. As one treatise put it, in the context of the close corporation:

> That corporate directors and officers owe a fiduciary duty to their corporation is, of course, well established. Some early decisions and even an occasional recent decision treat this duty as running only to the corporation, not to its shareholders. Most recent decisions and some statutes, however, affirm that this duty is owed to the corporation's shareholders as well as to the corporation itself.

confer standing on NACAP to sue. *See, e.g.*, *BNP Paribas*, 778 F. Supp. 2d at 420 (parent company could not sue for injuries suffered by its subsidiary); *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) ("A corporate officer or director generally owes a fiduciary duty only to the corporation over which he exercises management authority, and any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf"); 10 A.L.R. 6th 293 (2006) ("It has been a fundamental principle of corporate law that when a third party causes harm to a corporation, if the corporation does not bring an action for compensation, a shareholder may not proceed by way of a direct action to seek such recovery. Rather, it must bring a derivative action, acting on behalf of the corporation.").

The cases NACAP relies on are not to the contrary. *Manson v. Stacescu* is distinguishable because it involved shareholders found to suffer an injury "separate and distinct" from that sustained by the corporation. 11 F.3d 1127, 1132 (2d

---

James Cox & Thomas Hazen, Treatise on the Law of Corporations § 14:16 (3rd Ed.) (internal citations omitted). Here, of course, any fiduciary duty would arise as a matter of Saudi, not New York, law, and Plaintiffs have cited no authority on this point. Regardless, individual shareholders do not generally have standing to sue in their individual capacity for harm to the corporation, for the reasons that follow.

Cir. 1993). The court in *Henneberry v. Sumitomo Corp. of America* made the same distinction, noting that a shareholder can maintain a separate right of action only where the shareholder's injury resulted from a duty "independent of and extrinsic to" the duty owed to the corporate entity itself. 415 F. Supp. 2d 423, 439-40 (S.D.N.Y. 2006). NACAP has established no independent duty that Bazzi owed to it. If the purported fiduciary duty arose under Saudi law, Plaintiffs have not said how or why. Accordingly, NACAP is dismissed.

**B. SRB**

Defendants contend that SRB is a defunct entity and, as such, lacks the capacity to bring suit.[2] In support of this assertion, they have submitted two declarations from Haider Ala Hamoudi, a law professor at the University of Pittsburgh. Professor Hamoudi declares that "[b]ased on the materials that I have reviewed, I believe that SRB Saudi is no longer in operation" and therefore "has no standing to sue under Saudi

[2] The parties agree that Saudi law governs the question of SRB's capacity to sue. This is because SRB is a foreign LLC registered in Saudi Arabia. *See* R. Bazzi Mot. at 10; Fed. R. Civ. P. 17(b)(3) (for unincorporated entities, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located"); N.Y. L.L.C. Law § 801 ("[T]he laws of the jurisdiction under which a foreign limited liability company is formed govern its organization and internal affairs and the liability of its members and managers.").

law." Defs.'s Suppl. Decl. of Professor Haider Ala Hamoudi ¶ 2, ECF No. 27-8 ("Hamoudi Suppl. Decl."). The declarations marshal the evidence — largely circumstantial — leading him to conclude that SRB no longer has legal personhood. He cites, among other things, the revocation of various of SRB's business licenses, Defs.'s Decl. of Professor Haider Ala Hamoudi ¶ 51, ECF No. 28-2 ¶ 51 & Exhibit H; the court-ordered seizure and auction of SRB's assets, Hamoudi Suppl. Decl. ¶ 15 & Exhibit 3; and that a Saudi court was unable to locate SRB as of 2018, *id.* ¶ 14 & Exhibit 5.

Professor Hamoudi acknowledges, in his supplemental declaration, that SRB's shareholders resolved in 2014 to continue the company and honor its debts, as required under Saudi law for LLCs experiencing certain financial distress. *Id.* ¶¶ 22-24. But he opines that Saudi law is not "rigid and formalistic," and that a Saudi court "would, in [his] view" declare the 2014 resolution to be "ineffective" as a result of SRB avoiding its obligations to creditors over the past six years. *Id.* ¶ 29. Based on Professor Hamoudi's declarations, Defendants contend that "as a matter of law, the Company has been terminated." R. Bazzi's Reply Br. at 7, ECF No. 27-7. Plaintiffs vigorously oppose this contention.

Given that the disposition of the capacity issue involves complicated issues of fact and Saudi law, I conclude that it would be more efficient to assume without deciding, for

the moment, SRB's capacity to sue, and to reach the Defendants' Rule 12(b)(6) motion to dismiss the RICO claims.[3]

## III. Sufficiency of the RICO Allegations Under Rule 12(b)(6)

Section 1964(c) of the RICO statute provides a private right of action to any person "injured in his business or property by reason of" a substantive RICO violation. 18 U.S.C. § 1964(c). But the statute does not reach foreign injuries: in *RJR Nabisco*, the Supreme Court held that Section 1964(c) "does not overcome the presumption against extraterritoriality" and

---

[3] The Defendants frame this question, at times, as one of Article III standing. If that were the case, I would need to resolve it before reaching the merits. *See, e.g.*, *Anderson Grp. LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) ("[S]tanding is a threshold matter [that a court] must resolve before reaching the merits."). But this is a question of SRB's "capacity" to sue under Saudi law. Capacity to sue is "conceptually distinct" from standing and is "ordinarily not a jurisdictional issue." *LBBW Luxemburg S.A. v. Wells Fargo Sec., LLC*, 744 F. App'x 710, 714 n.3 (2d Cir. 2018) (summary order) (quoting 59 Am. Jur. 2d Parties § 26); *see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 66 (2d Cir. 2017) (summary order) ("The issue of lack of capacity to sue does not go to the jurisdiction of the court, as is the case when the plaintiffs lack standing." (quoting *City of New York v. State*, 86 N.Y.2d 286, 292 (1995)). The Defendants' argument that SRB is "a defunct entity . . . evokes the concept of capacity, not standing." *Manhattan Review LLC v. Yun*, No. 16-CV-0102, 2016 WL 6330474, at *3 (S.D.N.Y. Aug. 15, 2016), *report and recommendation adopted*, 2016 WL 6330409 (S.D.N.Y. Oct. 26, 2016).

Defendants attempt to bridge this gap by arguing that SRB's dissolution precludes it from seeking redress (which would defeat standing). *See* R. Bazzi Mot. at 13 (citing *Fund Liquidation Holdings LLC v. Citibank, N.A.*, 399 F. Supp. 3d 94, 103 (S.D.N.Y. 2019); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 15-CV-871, 2019 WL 4413197, at *3-4 (S.D.N.Y. Sept. 16, 2019); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 64 (D.D.C. 2015) (same)). But there is no assertion here that SRB has formally dissolved. Indeed, Defendants' own submissions suggest the opposite: their expert attests that a Saudi court "would" enter an order dissolving SRB, were the question posed. Hammoudi Suppl. Decl. ¶ 29. And the parties appear now to agree that SRB has followed the necessary procedures under Saudi law to "continue the company" despite its losses. Koop Aff. ¶¶ 10-11; Hamoudi Supp. Decl. ¶ 22.

therefore a private plaintiff "must allege and prove a *domestic* injury to its business or property." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016). SRB has not plausibly alleged a domestic injury here.

The Supreme Court did not provide guidance in *RJR Nabisco* on how to tell a foreign injury from a domestic one. The Second Circuit did, though, in *Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ("*Bascuñán I*"). Plaintiff Bascuñán was a citizen and resident of Chile, but he alleged a series of "injuries to property located within the United States" arising out of the theft of his assets by his financial advisor. *Id.* at 810. The Second Circuit held that certain of these injuries were domestic, and certain were not.

The distinction turned almost entirely on the locus of the property when it was stolen. *Bascuñán* framed the inquiry as an endeavor "to determine where the economic losses alleged by a civil RICO plaintiff are located geographically," *id.* at 817 — not where the alleged misconduct occurred. The Court concluded "that an injury to tangible property is generally a domestic injury only if the property was physically located in the United States." *Id.* at 819. Accordingly, the Court held the theft of funds from foreign bank accounts to be a foreign injury, and the theft of funds from U.S. bank accounts to be a domestic one. *Id*. Two years later, when the case was back on appeal, the

Circuit reiterated this point, finding for example that one alleged injury was domestic where the "theft or misappropriation occurred when the funds left the Estate, at which time they were located in a Morgan Stanley bank account in New York." *Bascuñán v. Elsaca*, 927 F.3d 108, 118 (2d Cir. 2019) ("*Bascuñán II*").

The geographies in this case and *Bascuñán* are in some sense inverted. The defendant in *Bascuñán* — Bascuñán's financial advisor and cousin, Elsaca — resided outside the United States throughout the scheme, but stole funds located here. Bazzi is alleged to have resided in the United States throughout much of the scheme, but to have stolen funds located in Saudi Arabia. Despite the inverted geographies, *Bascuñán*'s holding and reasoning dictate the outcome here, as the language quoted above makes clear: all of the money that Riad Bazzi allegedly stole came from accounts located in Saudi Arabia, even if it made its way to accounts in the United States thereafter. Am. Compl. ¶¶ 66-73.

Plaintiffs contend that *Bascuñán* does not control. They argue that jurisdiction can also lie when the offending conduct occurs in the U.S., rather than simply the effects of that conduct. They assert that *Bascuñán* does not — and cannot — hold otherwise, because the wrongdoer in that case (Mr. Elsaca) was located in Chile throughout the relevant time period. But this argument is inconsistent with *Bascuñán*'s reasoning, as set

out above; and several district courts applying the first *Bascuñán* decision have expressly held that RICO does not reach injuries to property located abroad, even if the wrongdoer acts from within U.S. borders. *See, e.g.*, *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 345 (S.D.N.Y. 2019) ("[E]vidence that Defendants' 'corrupt activities' took place in the United States does not demonstrate that the Trust suffered a 'domestic injury.'"); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345, 2018 WL 3579100, at *2 (S.D.N.Y. July 25, 2018) ("The appropriate subject of the inquiry is not the location of the injurious conduct but the location where the injury itself arose.") (cleaned up)); *Newman v. Jewish Agency for Israel*, No. 16-CV-7593, 2017 WL 6628616, at *5 (S.D.N.Y. Dec. 28, 2017) (the domestic injury inquiry focuses on "the location of Plaintiffs' property or financial interests" and not "the location of the Defendants"); *Elsevier Inc. v. Pierre Grossmann, IBIS Corp.*, No. 12-CV-5121, 2017 WL 5135992, at *4 (S.D.N.Y. Nov. 2, 2017) ("To determine whether a plaintiff has satisfied [the domestic injury] requirement, courts in this District have adopted a 'locus-of-effects approach,' which 'focus[es] on where the plaintiff felt the effects of the injury' rather than 'where the defendant committed the injury-inducing acts.'").

In trying to avoid the dictates of *Bascuñán*, SRB also invokes *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138

(C.D. Cal. 2016). The district court in *Tatung* identified a domestic RICO injury, based in part on its observation that "many of the actions that constitute part of the RICO scheme took place in California." *Id.* at 1157. But *Tatung* is unavailing here, because some of those actions that took place in California also led to harm in California. For example, the *Tatung* defendants endeavored to evade payment of a judgment obtained in the U.S. *Id.* at 1156. The *Tatung* court held that the U.S. judgment was, itself, a form of property — property obviously located here. *Id.* In any event, to the extent *Tatung* conflicts with *Bascuñán*, *Bascuñán* of course controls.

For these reasons, SRB has failed to allege a domestic injury, and its civil RICO claim must be dismissed. Having dismissed the RICO claim on that basis, the Court has no cause to reach the statute of limitations issue (the Bazzis' second articulated basis for dismissal of the RICO claims).

## IV. State-Law Claims and Diversity Jurisdiction

SRB also brings a number of state-law claims against the Bazzis: fraud and breach of fiduciary duty against Riad Bazzi, and unjust enrichment and civil conspiracy against both Riad and Souad. Defendants contend that the choice of law governing these claims (New York law versus Saudi law) should turn on New York's "interest analysis," *see Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993), and that the interest

analysis requires the application of Saudi law. Applying Saudi law, the Defendants continue, the state-law claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

Before reaching the choice-of-law question or the 12(b)(6) analysis of the state claims, however, the Court turns — *sua sponte* — to the question of whether diversity jurisdiction lies in this case. If it does not, I would likely decline to exercise supplemental jurisdiction over the state-law claims, given that no federal claim survives. See 28 U.S.C. § 1367(c)(3).

I called for supplemental submissions on the existence of diversity jurisdiction on January 28, 2021. In their submissions, the parties appear to agree on the law applicable to the diversity analysis. Defs.'s Letter, ECF No. 30; Pls.'s Letter, ECF No. 31. They disagree, however, on the place of the Bazzis' domicile. Defs.'s Letter at 2 ("[T]he Bazzis are dual citizens domiciled in Lebanon at least as of when this case was filed in September 2019, and they continue to be domiciled in Lebanon through the present day."); Pls.'s Letter at 4 ("[T]he law and the evidence establish conclusively that for purposes of this suit, Defendants were domiciled in New York at the time the Complaint was filed."). Establishing domicile in this case will involve a fact-intensive inquiry. *See, e.g.*, *Bank of India v. Subramanian*, No. 06-CV-2026, 2007 WL 1424668, at *4 (S.D.N.Y.

May 15, 2007) (noting that "domicile inquiries are fact-intensive").

Given this uncertainty, I decline to rule on the motion to dismiss the state-law claims at this point. I therefore dismiss the Defendants' 12(b)(6) motion on the state claims, without prejudice to refile if the Court's diversity jurisdiction is established. In the meantime, I will hold a remote hearing on April 21, 2021 to determine whether jurisdiction exists. The parties should be prepared to call witnesses whose testimony they believe is relevant to the domicile of the Defendants (and any relevant change thereof). *See, e.g.*, *Herrick Co. v. SCS Commc'ns Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (discussing the parties' respective burdens when a change in domicile is alleged); *Pacho v. Enter. Rent-A-Car*, 510 F. Supp. 2d 331, 335 (S.D.N.Y. 2007) (same). Defendants should be prepared to testify personally. In anticipation of this hearing, the Court grants plaintiff thirty days to conduct limited discovery on the issue of the Bazzis' domicile. Any documents to be submitted shall be pre-marked and filed with the Court at least two business days prior to the hearing.

In the event that diversity jurisdiction is established, the Court will take up the question of whether SRB maintains a continuing legal existence under applicable law.

## V. Conclusion

In sum, the Defendants' motion to dismiss is granted in part. NACAP lacks standing to sue and is dismissed. SRB has failed to allege a domestic injury, and its civil RICO claims are therefore dismissed. The motion to dismiss the state-law claims is itself dismissed, without prejudice, pending the outcome of a hearing and determination on whether diversity jurisdiction exists, and (if necessary) whether SRB has capacity to sue.

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: March 16, 2021
Brooklyn, New York