UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

SUEDROHRBAU SAUDI CO. LTD.,

                Plaintiff,        **MEMORANDUM & ORDER**
                                                      19-CV-5130(EK)(LB)
       -against-

RIAD BAZZI and SOUAD BAZZI,

                Defendants.

-------------------------------------x

ERIC KOMITEE, United States District Judge:

       Plaintiff Suedrohrbau Saudi Co. Ltd. ("SRB") initiated this action against defendants Riad Bazzi and his wife, Souad (the "Bazzis").[1] SRB alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and asserted additional claims based in New York State law. The complaint invoked two bases for this Court's jurisdiction: federal-question and diversity. In my order of March 16, 2021, I dismissed the RICO claim because of the Complaint's failure to allege a domestic injury. Federal-question jurisdiction therefore dissipated.

       Before proceeding to reach Plaintiff's state-law claims, I raised *sua sponte* the question of whether diversity

---

[1] Two plaintiffs filed the initial (and amended) complaint in this case: SRB and NACAP Pipeline & Energy Beteiligungs GmbH. I dismissed NACAP's claims on March 16, 2021 based on its lack of standing. *See* Memorandum & Order, ECF No. 36.

1

jurisdiction truly lies between the parties. Following supplemental briefing, I held an evidentiary hearing on April 28, 2021. For the following reasons, I now conclude that diversity jurisdiction is lacking because the Bazzis were United States citizens domiciled abroad when the Complaint was filed. I decline to exercise supplemental jurisdiction over SRB's state claims, given the lack of any remaining federal question, and therefore dismiss the case.

## I. Factual Background

The parties' dispute over diversity jurisdiction centers on the Bazzis' intentions; the parties do not (by and large) dispute the facts regarding the Bazzis' actual movements from country to country. The following facts are taken from testimony at the evidentiary hearing and documentary evidence submitted by both parties. The Bazzis, their daughters, and Heiko Koop (Riad's former boss at SRB) testified at the hearing. Where a factual question is contested, I indicate as much below. To the extent I make a credibility determination or otherwise decide a contested fact, I indicate that explicitly.

Riad and Souad Bazzi were born in Lebanon in 1955 and 1956, respectively. Riad Bazzi Aff. ("Riad Aff.") ¶ 1, ECF No. 30-1; Souad Bazzi Aff. ("Souad Aff.") ¶ 1, ECF No. 30-2. They met in Beirut and were married in 1982. Hearing Transcript dated April 28, 2021 ("Tr.") 7:12-17, ECF No. 58. Shortly

thereafter, they moved to Saudi Arabia, where Riad was then working (for a company other than SRB). Tr. 7:18-8:5. The Bazzis have three daughters; their eldest, Lama, was born in Lebanon and their younger daughters, Dana and Maha, were born in Saudi Arabi. Riad Aff. ¶ 11. In 2001, Souad returned to Lebanon with her daughters so they could attend high school there. Tr. 8:24-9:6; 123:9-11. Riad continued to work in Saudi Arabia, but visited his family in Lebanon often. Tr. 75:10-25.

In 2007, the Bazzis and two of their daughters, Dana and Maha, applied for U.S. immigrant visas as a family.[2] Tr. 73:4-7; Pl.'s Hr'g. Ex. 15, ECF No. 54-2. Lama did not apply because she exceeded the age requirement for a family petition, but she moved to the U.S. in 2009 to work as a medical resident at the SUNY Downstate Medical Center in Brooklyn. Tr. 21:2-25; 83:10-12.

In explaining the decision to seek residency in the U.S., Souad testified that she wanted it "mainly for my daughters," so they would have "a better future" and could "live in a stable country." Tr. 68:6-11. Their immigrant visa applications were granted in 2008, Tr. 76:13-14, but the Bazzis

---

[2] The Bazzis were able to file a "family petition" for an F-3 immigrant visa because Souad's father was a U.S. citizen. Tr. 17:8-10; *see also Green Card for Family Preference Immigrants*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-family-preference-immigrants (last visited September 7, 2021).

3

did not immediately travel to the U.S. They purchased a four-bedroom apartment in Beirut (the "Beirut apartment") in 2009, which they still own. Riad Aff. ¶ 4 and Exhibit B (proof of residence in Lebanon); Tr. 16:6-7.

Riad and Souad started spending time in the United States in 2009, staying in short-term rentals. Tr. 61:23-62:1. In 2011, however, Lama had become "seriously sick" and the Bazzis "needed to be around her more." Tr. 62:9-12; *see also* Souad Aff. ¶ 11. The Bazzis purchased a two-bedroom apartment on Grand Army Plaza in Brooklyn (the "Brooklyn apartment") in June of 2011. Riad Aff. ¶ 12; Tr. 19:6-13. Souad considered the Brooklyn apartment a "pied-a-terre." Tr. 18:16-20. Maha moved to the U.S. in 2011, and Dana followed in 2012. Tr. 102:1-5; 143:18-21.

While living in Brooklyn, the Bazzis applied to become U.S. citizens because their green cards were "going to expire in 2018." Tr. 67:19-22. Souad testified that they planned to return to Lebanon as soon as the citizenship applications were granted. Tr. 113:18-25. They became U.S. citizens in July 2019, though they retained their Lebanese citizenship. Riad Aff. ¶¶ 2, 14; Souad Aff. ¶¶ 2, 12. Souad testified that upon learning they would receive U.S. passports by the end of July 2019, she and her husband booked a flight to Lebanon for August 4, 2019, with a return scheduled for October 4, 2019. Tr. 44:9-

4

20. Souad testified that she booked the return ticket because she was "planning to come back [to New York] some time to visit my daughters," but that the October 4th date was "tentative" and "could be moved." Tr. 48:20-25. The Bazzis did not return to New York in October; they remained in Beirut. Tr. 49:1-5.

In late November, the Bazzis engaged a real estate agent to list the Brooklyn apartment, and Maha worked to prepare the apartment for showings. Tr. 145:16-25. A contract was signed on January 24, 2020; the sale closed on March 4, 2020. Defs.' Hr'g. Ex. 33, ECF No. 53-20; Tr. 91:21-23. The Bazzis returned to New York over November and December of 2020, following the birth of their grandson. Tr. 47:4-48:9; 108:1-3. There is no evidence of any subsequent visit to the United States.

## II. Legal Standard

Federal courts possess limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They are "empowered to act only within the bounds of Article III of the Constitution and statutes enacted by Congress stemming therefrom." *W.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir. 1994). Article III grants jurisdiction to hear cases "arising under" the Constitution and federal law, as well as cases "between Citizens of different States." U.S. Const., Art. III, § 2.

Cases involving diversity of citizenship are governed by 28 U.S.C. § 1332(a).

Diversity jurisdiction requires "complete diversity of citizenship." *Owen Equip. & Erection Co. v. Kroger*, 98 S. Ct. 2396, 2398 (1978). This means that each defendant must be a citizen of a different state from each plaintiff. *Id.* The citizenship of a party is determined by reference to their "domicile," which is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *E.g.*, *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (internal quotations omitted). Domicile is acquired at birth and presumed to continue. *Id*. As a general rule, courts examine citizenship at the time the action was commenced. *Id.* at 947.[3]

---

[3] Defendants argue that under *Wright v. Musanti*, 887 F.3d 577, 585 (2d Cir. 2018), I should assess diversity as of the date the federal claims were dismissed (*i.e.* March 2021), rather than the date the Complaint was filed. This timing question turns out to be unnecessary to resolve given my finding, *infra*, that the Bazzis remained domiciled in Lebanon throughout the relevant period. Nevertheless, it is unclear that *Wright*'s reasoning would otherwise control. In *Wright*, the plaintiff and defendant were both citizens of New York when the case was filed, and the complaint asserted only federal-question jurisdiction. The district court subsequently dismissed the federal question, and the plaintiff invoked diversity jurisdiction *at that time*, because the defendant had moved to Tennessee by then. The Second Circuit held that "in a case such as this, where federal question jurisdiction was properly asserted at the outset of a case and diversity jurisdiction attached later (but before federal question dissipated), the standard rule that diversity jurisdiction only exists where diversity is present at the time of the original complaint does not apply." *Id*. Here, in contrast, SRB did invoke the Court's diversity jurisdiction in the Complaint — presumably based on the view that the Bazzis were U.S. citizens domiciled in New York at that time. It is not clear that *Wright* would preclude me from looking back to the Bazzis' domicile at the time the Complaint was filed, even after I dismissed

6

If the Bazzis were domiciled in Lebanon when this case commenced, as they contend, diversity is lacking. "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). A suit brought against United States citizens domiciled abroad may not, therefore, be premised on diversity. *Id.*

Generally speaking, a plaintiff bears the burden of proving diverse citizenship by a preponderance of the evidence. *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 56 n.3 (2d Cir. 2019). A party asserting a favorable change in domicile, however, has the burden of proving the "intent to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

---

the federal claim. Said differently, *Wright* can be read to say that the plaintiff *need not* establish diversity jurisdiction until it is necessary, but still allow that the plaintiff *can* establish such jurisdiction at the outset of the case, and can rely on that establishment throughout the proceedings. To say otherwise would be to give the defendant the potential to defeat diversity jurisdiction over state claims by moving after the case was filed.

7

### III. Discussion

The Defendants' original domicile was Lebanon, where they were born. *Jones v. McMasters*, 61 U.S. 8, 11 (1857) (domicile of "birth or origin . . . continues until another is acquired"); *Palazzo*, 232 F.3d at 42 ("Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change."); Riad Aff. ¶ 1; Souad Aff. ¶ 1. They met, married, and (for a time) raised their children there. Riad Aff. ¶ 11; Souad Aff. ¶ 9; Tr. 7:12-17; 64:17-22. Thus, the question is whether and when that domicile may have changed.[4]

Though the Bazzis purchased an apartment in New York in 2011, Plaintiff has failed to carry its burden to prove that their domicile changed with (or following) this move. The move to Brooklyn is, of course, significant, but it is not dispositive. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." (internal citations omitted)). A

---

[4] The Bazzis lived, and Riad worked, in Saudia Arabia for an extended period of time, as noted above. *See* Tr. 75:10-25 (Riad lived in Saudi Arabia for nearly thirty years); *see also* Tr. 8:1-15; 8:24-9:2 (Souad Bazzi lived in Saudi Arabia for nearly twenty years). Plaintiff SRB does not contend, however, that Riad or Souad were ever domiciled there. Instead, Plaintiff focuses its argument for diversity jurisdiction on the notion that the Bazzis became domiciled in the United States during the time they resided in Brooklyn.

8

residence of a more temporary nature will not necessarily dictate domicile. *See, e.g., Kleiner v. Blum*, No. 03-CV-3846, 2003 WL 22241210, at *1-2 (S.D.N.Y. Sept. 30, 2003) (considering, for purposes of diversity, whether a residence was rented or owned and how carefully it was furnished, among other things).

Where a party owns more than one residence, a court looks to where the individual has an intention of returning whenever they are absent. *Gutierrez v. Fox*, 966 F. Supp. 214, 217 (S.D.N.Y. 1997). "To ascertain intent, a court must examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent." *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 696 F. Supp. 37, 41 (S.D.N.Y. 1988). No single factor is conclusive. *Boston Safe Deposit & Tr. Co. v. Morse*, 779 F. Supp. 347, 349 (S.D.N.Y. 1991).

To determine intent, courts look to indicia including the locations of the party's spouse and children; real and personal property; voting registration; payment of taxes; bank accounts; driver's and other licenses; churches, clubs, and other membership associations; and the location of a person's doctor, lawyer, accountant, dentist, and / or stockbroker. *Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (quoting 1 Moore's Federal Practice ¶ 0.74[3-3] at 707.64).

The Bazzis demonstrated an intent to return to Lebanon throughout their time in New York. *Linardos*, 157 F.3d at 948. They maintained a significantly larger — family-sized — home in Lebanon throughout their residency in the U.S. Tr. 18:23-19:13 (Brooklyn apartment had "one big bedroom, and one small one"); Tr. 50:17-19 (Beirut apartment had four bedrooms that fit all the Bazzis' daughters). They traveled extensively to Lebanon. Pl.'s Hr'g Ex. 8, ECF No. 53-3 (Souad's citizenship application listing 257 days in Lebanon in 2013, 242 days in 2014, 213 days in 2015, 179 days in 2016, and 119 days in 2017). The Bazzis spent time with family and friends in Lebanon; Souad's mother, two sisters, and brother live there, as well as Riad's siblings and their nieces and nephews. Tr. 60:1-6; 64:17-65:4; 138:9-12. They insured and maintained the Beirut apartment, paid taxes on that property, and owned a car that they kept in Beirut. *See* Riad Aff. ¶ 4 and Exhibit B (proof of residence in Lebanon); ¶ 6 and Exhibit C (property tax receipts); ¶ 8 and Exhibit F (auto maintenance records). They held Lebanese government identification cards, which they renewed in 2009 and 2014. Riad Aff. ¶ 10 and Exhibit I (copy of Lebanese identification card); Souad Aff. ¶ 8 and Exhibit F (same). They also maintained Lebanese medical insurance from at least 2011 through 2021. Riad Aff. ¶ 7 and Exhibit D (letter from insurer); Souad Aff. ¶ 7 and Exhibit D (same). They saw doctors in Beirut, not New

10

York, including for annual physicals. Tr. 56:7-57:6; 58:5-14 (Souad had dentist appointments in Lebanon in 2016, 2017, and 2019); 67:3-11 (gynecologist appointments in Lebanon "every year"). Souad also worships in Lebanon — she testified that she "visits" Saint Charbel monastery outside Beirut weekly when in Lebanon. Tr. 69:9-15. Defendants testified that their plan had always been to move back "permanently" to Lebanon after receiving citizenship. Tr. 114:7-9; 113:18-21. And they retained their Lebanese citizenship even after U.S. naturalization. Riad Aff. ¶ 2; Souad Aff. ¶ 2.

When the Bazzis did move back to Beirut in 2019, Riad had the car serviced and obtained a Lebanese driver's license — prior to the filing of this lawsuit. Riad Aff. ¶ 8 and Exhibit F (auto shop invoice dated August 23, 2019); ¶ 9 (explaining that his Saudi license, which allowed him to drive in Lebanon, expired in September 2019) and Exhibit H (Lebanese driver's license). They again received medical care. Tr. 54:22-59:22 (Souad visited eye doctor and dentist in August and had blood work done in September); Defs.' Ex. 26, ECF No. 54-6 (blood work record); Defs.' Ex. 30, ECF No. 53-18 (pharmacy record from 2019 to 2021); Defs.' Ex. 31, ECF No. 53-19 (eyeglass prescription dated August 27, 2019). Their daughters visited them in Lebanon multiple times over the remainder of the year — Lama in August 2019 and again in September 2019; Maha from the end of September

11

to early October 2019; and Dana in December 2019.  Tr. 105:7-19; 107:4-14; 135:11-21.

These factors overwhelmingly support the conclusion that the Bazzis remained domiciled in Lebanon throughout the period of their U.S. residency.  *See, e.g.*, *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03-CV-10333, 2006 WL 300477, at *2 (S.D.N.Y. Feb. 7, 2006) (plaintiff who moved to Pennsylvania was nonetheless domiciled in New Jersey because he maintained his place of worship, kept his New Jersey license, and had family in New Jersey); *Gutierrez*, 966 F. Supp. at 218 (New York domicile supported by location of primary physician and medical services, along with statement of intent to live permanently in New York); *Apace Commc'ns, Ltd. v. Burke*, No. 07-CV-6151L, 2009 WL 1748711, at *5 (W.D.N.Y. June 19, 2009) (location of automobile and other personal property is a "significant factor" of domicile).

Plaintiff has the burden of demonstrating a change in domicile *to New York* by clear and convincing evidence, and SRB has not carried that burden.  *Van Buskirk*, 935 F.3d at 56 n.3; *see also Palazzo*, 232 F.3d at 42 (party arguing that a change in domicile occurred must prove the change by clear and convincing evidence).  Plaintiff points to the purchase of the Brooklyn apartment and the time the Bazzis resided in the U.S. to argue that New York was their "true fixed home."  *Linardos*, 157 F.3d

12

at 948. Plaintiff also invokes their daughters' residence in the U.S., the Bazzis' payment of U.S. taxes from 2013 to 2018, their maintenance of U.S. bank and brokerage accounts, and the fact that they obtained basic U.S health insurance. *See* Riad Aff. ¶ 17; Souad Aff. ¶ 15; Pl.'s Hr'g Ex. 19, ECF Nos. 54-3, 54-4; Declaration of Robert S. Landy ¶ 3, ECF No. 52-1.[5]

The evidentiary record demonstrates, however, that the Bazzis did not procure U.S. driver's licenses during their time in this country, register to vote here, own or rent a car, hold any U.S.-based employment at all, attend religious services, or even have a social network in New York. *See* Riad Aff. ¶ 18; Souad Aff. ¶ 16; Tr. 64:23-25; 68:24-69:2; 110:16-20. Plaintiff did not rebut any of this evidence. U.S. tax returns are less salient because there is no optionality associated with their filing, unlike decisions regarding where to attend doctor's appointments, pray, vote and socialize. *Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857, at *7 (E.D.N.Y. Jan. 2, 2018), *R. & R. adopted*, 2018 WL 1089328 (E.D.N.Y. Feb. 26, 2018) ("On the spectrum of kinds of evidence that this Court may consider when

---

[5] Plaintiff had previously suggested that the 2019 sale of the Brooklyn apartment might have been a sham. Pls.' Letter dated Feb. 11, 2021 at 3, ECF No. 31 ("But it is not even clear from the record if the Bazzis sold their apartment to a third party, or to themselves, or a family member."). But SRB abandoned this argument after the evidentiary hearing. *See* Pl.'s Post-Hearing Br. in Supp. of Finding Subject Matter Jurisdiction Based on Diversity ("Pl.'s Br.") at 1, ECF No. 52 ("While their eventual sale of the apartment did indicate an intention to change domicile, the Bazzis took no action in that regard until late November 2019.").

13

determining domicile, tax returns are on the weaker end."). I also ascribe less weight to the residency of the Bazzis' children because they are adults. *Armstrong v. Coghill*, No. 20-CV-00275, 2020 WL 6551963, at *5 (D. Haw. Nov. 6, 2020) ("Because Coghill's children are both adults . . . the Court affords limited weight to this factor."); *see also Kleiner v. Blum*, No. 03-CV-3846, 2003 WL 22241210, at *2 (S.D.N.Y. Sept. 30, 2003) (no domicile in New York, despite plaintiff's adult children residing here).

Plaintiff also asserts that the Bazzis' decision to obtain American citizenship is "presumptive, if not conclusive, evidence of their U.S. domicile." Pl.'s Br. at 4. SRB bases this assertion on language in federal immigration regulations — particularly 8 C.F.R. § 316.2(a), which provides that "to be eligible for naturalization, an alien must establish that he or she . . . (3) [h]as resided continuously within the United States, as defined under § 316.5, for a period of at least five years after having been lawfully admitted for permanent residence." Section 316.5, in turn, states that "for purposes of this chapter, including § 316.2 (a)(3), . . . an alien's residence is *the same as that alien's domicile*, or principal actual dwelling place, without regard to the alien's intent." 8 C.F.R. § 316.5(a) (emphasis added). Therefore, according to SRB, the Bazzis must have represented to immigration authorities

14

that their "domicile" was New York, and they cannot credibly argue otherwise now.

There are two problems with this argument, both of which emerge from the face of the above-quoted regulation itself. First, the regulation says that it is applicable "for the purposes of this chapter" — namely, the chapter setting forth "General Requirements for Naturalization." *Id*. It is axiomatic that the same word can have different meanings in different statutory schemes, *e.g. United States v. Sterling Nat'l Bank & Tr. Co. of N.Y.*, 494 F.2d 919, 923 (2d Cir. 1974), and Plaintiff cites no case holding that a successful application for residence in the United States can determine domicile in the diversity-jurisdiction context. Second, and more importantly, the regulation states that for immigration purposes, domicile is a function of the "principal actual dwelling place" for the period, "*without regard to the alien's intent*" on a going-forward basis. 8 C.F.R. § 316.5(a) (emphasis added). For purposes of diversity jurisdiction, of course, the exact opposite is true; intent is paramount. *E.g.*, *Linardos*, 157 F.3d at 948.

Plaintiff also urges the Court to discount any "self-serving testimony" given by the Defendants. Plaintiff relies primarily on *Shcherbakovskiy v. Seitz*, No. 03-CV-1220, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010), where the court found

15

diversity jurisdiction despite the counterclaim-defendant's insistence that his domicile did not support it. The court noted the "self-serving" nature of his testimony, which contradicted representations he had made to immigration authorities. Obviously, all testimony by a party can be said to be "self-interested" to some degree. But here, the Bazzis' testimony was neither contradictory nor unsupported; to the contrary, they offered consistent accounts of their intentions and relevant history, which were corroborated by extensive documentary evidence including real property records, travel itineraries, health insurance and medical records, social and religious practices, and licenses.[6] And there is of course no blanket rule dictating that a party's testimony *must* be discounted simply because the witness, as a party to the litigation, may have motive to lie. "One's testimony with regard to his intention" should "be given full and fair consideration," even if it may "frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." *District of Columbia v. Murphy*, 314 U.S. 441, 456 (1941); *cf. Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) (a party's "mere subjective statements

---

[6] Riad did not hold a Lebanese driver's license until August 2019. Tr. 109:22-25. Before that, however, he held a Saudi Arabian license, which afforded him full driving privileges in Lebanon. Tr. 110:5-14.

16

. . . of intent to make [a particular jurisdiction] one's home, of course, cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent"). Here, unlike in *Shcherbakovskiy*, there are no such contradictions or inconsistences that undermine the Defendants' testimony.

Finally, Plaintiff relies heavily on the Defendants' round-trip plane ticket for the August 2019 trip to Beirut, with a return in October 2019 — ostensibly an indication of the Bazzis' intent to return to the U.S., which (Plaintiff argues) changed only after this lawsuit was filed on September 9, 2019. The Bazzis vigorously dispute this argument. They assert that the return ticket was flexible (and therefore not an indication of intent to return at any particular time, let alone for any particular period). They also contend that two of the Bazzis' daughters visited them in Lebanon in September 2019, which they would not have needed to do if the Bazzis were definitively set to return in October.

Given the finding above, however, that the Bazzis were domiciled in Lebanon prior to the filing of the initial complaint and throughout this litigation, there is no need to consider the significance of the Defendant's sale of the Brooklyn apartment and decision not to use their purchased plane ticket to return to New York in October 2019.

17

In sum, Plaintiff has not carried its burden to show a change in domicile to New York.  The Bazzis were domiciled in Lebanon at all relevant times, and thus became U.S. citizens "domiciled abroad" in July 2019, when their citizenship applications were granted.  Diversity is therefore lacking under *Cresswell v. Sullivan & Cromwell*, 922 F.2d at 68, *supra*.

### IV. Conclusion

For the foregoing reasons, there exists no diversity of citizenship in this case.  Given that, I decline to exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(c).  *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that if all federal claims are dismissed before trial . . ., the state claims should be dismissed as well." (cleaned up)).  Accordingly, Plaintiff's remaining state-law claims are dismissed.  The Clerk of the Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    September 7, 2021
          Brooklyn, New York